

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF OREGON**

**RANDALL L. DUNN**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326 - 4175

JoANNE SHERMAN
LAW CLERK

KARYN A. COLE
JUDICIAL ASSISTANT

December 16, 2005

Ms. Eleanor M. Lindquist
540 Fathom Dr.
Foster City, CA 94404

Ms. Ann K. Chapman
Vanden Bos & Chapman
319 S.W. Washington St., Ste. 520
Portland, OR 97204

      Re: **In re Jeffrey C. Lindquist, Debtor, Case No. 05-30611-rld13**

Dear Ms. Lindquist and Ms. Chapman:

      On October 27, 2005, I held an adjourned confirmation hearing ("Adjourned Confirmation Hearing") in the Chapter 13 case of Jeffrey Lindquist ("Dr. Lindquist"). I made findings and conclusions on the record and confirmed Dr. Lindquist's Chapter 13 plan, overruling the oral objection of Eleanor Lindquist ("Ms. Lindquist"), made at the Confirmation Hearing. The confirmation order ("Confirmation Order") was entered the same date.

      After the Confirmation Hearing was concluded, Ms. Lindquist filed with the clerk's office her Objection to the Plan ("Objection"). The Objection was supported by Ms. Lindquist's Declaration ("E. Lindquist Declaration").[1]

---

[1] Paragraphs 1 through 4 of the E. Lindquist Declaration relate to confirmation of the Chapter 13 plan. Paragraphs 5 and 6 of the E. Lindquist Declaration relate to the court's dismissal of adversary proceeding 05-3236-rld. Ms. Lindquist filed a timely Notice of Appeal of the dismissal order in the adversary proceeding, thereby depriving this court of jurisdiction with respect to the subject matter of paragraphs 5 and 6. Therefore, for purposes of my determination of the Motion, any reference to the E. Lindquist Declaration is limited to paragraphs 1 through 4 of the E. Lindquist Declaration.

On October 31, 2005, I advised the parties by letter that I would treat the Objection as a motion for reconsideration ("Motion") of the Confirmation Order made pursuant to Fed. R. Civ. P. 59, incorporated in this bankruptcy case by Fed. R. Bankr. P. 9023. I further advised the parties that I would decide the Motion on affidavits as contemplated by Fed. R. Civ. P. 59(c). I set November 7, 2005, as the deadline for Dr. Lindquist to file his opposing affidavit, and set November 18, 2005, as the deadline for Ms. Lindquist to file a reply affidavit if she chose to do so. In addition, I advised the parties that I would (1) take the Motion under advisement after November 18, 2005, (2) take judicial notice of the entire record in this case for the purpose of deciding the Motion, and (3) issue a written ruling on the Motion.

I note that Ms. Lindquist filed a Notice of Appeal from the Confirmation Order on November 3, 2005. This Notice of Appeal does not divest me of jurisdiction to rule on the Motion. See Fed. R. Bankr. P. 8002(b).

On November 7, 2005, Dr. Lindquist filed two affidavits, both by Ann K. Chapman, who is Dr. Lindquist's bankruptcy attorney. One affidavit opposes the Motion ("Chapman Affidavit #1"). The other affidavit opposes the E. Lindquist Declaration ("Chapman Affidavit #2").

On November 15, 2005, Ms. Lindquist filed an objection to my taking judicial notice of the entire record in this case (the "Judicial Notice Objection"). Although Ms. Lindquist complains about alleged failures of the Bankruptcy Court Clerk's office to accept for filing certain documents she submitted to the Bankruptcy Court, she states in the Judicial Notice Objection that,

> "The only issue herein is did the court's clerk's Office received [sic] a timely Proof of Claim Form on March 25, 2005 and never proceeded to docket the proof of claim or submit it to the Judge to see if [sic] was in proper form and which is required by Rule 2005 of the Bankruptcy Rules...."

That issue is irrelevant to deciding the Motion.

A bankruptcy judge generally may take judicial notice of the bankruptcy court's own records in a subject case and in related cases and proceedings. See Russell, Bankruptcy Evidence Manual § 201.5, p. 665 (2006 ed.); State of Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975). In this case, a review of the docket and documents on file with the Bankruptcy Court is essential to consideration of the arguments raised by Ms. Lindquist and Dr. Lindquist with respect to the Motion, and to provide a coherent basis for appellate review, if required. I find that the Judicial Notice Objection is not well taken, and I will overrule Ms. Lindquist's objection to my taking judicial notice of the entire record in this case in deciding the Motion.

On November 18, 2005, Ms. Lindquist filed "Objections to the Debtor's Attorney of Record Affidavit in Opposition to the Motion for Reconsideration pursuant to Federal Rules of [sic] 602" ("Lindquist Objections"). I find Ms. Chapman's introductory statement in Chapman Affidavit #1 that, "I, Ann K. Chapman, being first duly sworn on oath depose and say as follows..." satisfies the general requirement of Federal Rule of Evidence 602 that the statements in Chapman Affidavit #1 be based on Ms. Chapman's personal knowledge. Nevertheless, I find that Ms. Lindquist raises objections that are well taken with respect to a number of statements in the Chapman Affidavit that reflect either Ms. Chapman's recapitulation of information gleaned from a review of the docket or records of the Bankruptcy Court with regard to this case, or her legal conclusions. Accordingly, I intend to treat Chapman Affidavit #1 generally as a legal memorandum in opposition to the Motion and rely upon my own review of the record in this case in making my factual findings, unless otherwise specifically noted. Likewise, I intend to treat the Lindquist Objections as a legal memorandum/reply to the Chapman Affidavit #1.

With the submission for filing of the Lindquist Objections, the record with respect to the Motion was closed. The Motion then was submitted for my decision.

On December 2, 2005, after the Motion was submitted for decision, Ms. Lindquist filed an "Amendment to Motion for Reconsideration" ("Amendment"). Ms. Lindquist did not request leave to amend her pleadings and does not demonstrate why the additional issues raised in her Amendment could not have been raised by the deadline for her reply. The Amendment contains no declaration, so raises no additional factual issues. Accordingly, I consider the Amendment untimely and do not address it further in this letter opinion. To do otherwise would create a moving record, requiring yet a further response from Dr. Lindquist. I established the timetable for determination of the Motion to preclude precisely that scenario.

The Motion states that Ms. Lindquist was never timely served with the debtor's Chapter 13 plan, and, therefore, her rights to due process of law have been denied. In fact, the sole issue raised by the Motion is due process. For the reasons set forth below, I find that Ms. Lindquist is not credible in her assertions that she did not receive adequate notice. She had a number of opportunities over an extended period of time to evaluate and present objections to Dr. Lindquist's plan prior to the Adjourned Confirmation Hearing. She had adequate due process notice in connection with the entry of the Order Confirming Plan, and I, therefore, deny the Motion.

In considering confirmation of a plan in chapter 13, due process requires that concerned creditors and interested parties receive adequate notice and an opportunity to be heard with respect to objections they may raise regarding provisions of the plan.

In considering the notice required to be given interested parties prior to confirmation of a debtor's chapter 13 plan, the Ninth Circuit has held that when a party receives notice that a chapter 13 case has been filed, "it is under constructive or inquiry notice that its claim may be affected, and it ignores the proceedings to which the notice refers at its peril." <u>Lawrence Tractor Co. v. Gregory</u>, 705 F.2d 1118, 1123 (9th Cir. 1983). In the <u>Lawrence Tractor</u> decision, the Ninth Circuit goes on to cite with approval the following language from <u>D.C. Transit Systems, Inc. v. United States</u>, 531 F. Supp. 808, 812 (D.D.C. 1982):

> Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led. When a person has sufficient information to lead him to a fact, he shall be deemed to be conversant with it. <u>Id</u>.

Ms. Lindquist asserts that her due process rights were violated because she never was timely served with Dr. Lindquist's Chapter 13 Plan. She further asserts that she first received the Chapter 13 Plan by fax from Ms. Chapman on October 26, 2005, the day before the Adjourned Confirmation Hearing. The record reflects that Ms. Lindquist had notice of the confirmation proceedings in Dr. Lindquist's chapter 13 case as follows:

Dr. Lindquist's chapter 13 petition was filed, initiating this case, on January 21, 2005. Docket #2. The Notice of Bankruptcy Case, Meeting of Creditors, Deadlines, and Proposed Case Dismissal ("Notice of Bankruptcy Case"), providing notice of the § 341(a) meeting of creditors (March 1, 2005), and the initial confirmation hearing (April 21, 2005), was mailed to all parties listed on Dr. Lindquist's mailing matrix by the Bankruptcy Noticing Center ("BNC") on January 25, 2005. <u>See</u> Docket ## 6 and 7. The Notice of Bankruptcy Case was mailed to Ms. Lindquist at 38 Bryant St. Apt. 402, San Francisco, CA 94105-6112. Docket #7, p. 5. On page 2 of the Notice of Bankruptcy Case, to the right of the caption in bold print "Objections to Confirmation," it states,

> Any creditor objecting to any provision of the debtor's plan, whose objections were not resolved at the meeting of creditors, must personally appear at the confirmation hearing...and present such objections or file detailed written objections with the court at least 3 business days before such hearing. Filing a proof of claim rejecting the plan, or motion for relief from the automatic stay, will not be considered an objection to the confirmation. Docket #6, p. 2.

On February 8, 2005, Dr. Lindquist's counsel filed a change of address form, changing the address for Ms. Lindquist for notice purposes to 540 Fathom Dr., San Mateo, CA 94404-1005. Docket #11. This is the address that Ms. Lindquist uses on her pleadings filed in this case, including the Motion (<u>see</u> Docket #169) and the Lindquist Objections (<u>see</u> Docket #200).

Ms. Ann Chapman
Ms. Eleanor Lindquist
December 16, 2005
Page 5



It also is the address to which the BNC sent subsequent court notices.  <u>See</u>, <u>e.g.</u>, Docket #32, p. 4, and Docket #70, p. 2.

      Dr. Lindquist's chapter 13 plan was filed with the court on February 11, 2005.  Chapman Affidavit #1, p. 2, lines 24-25.  Ms. Lindquist was served with the chapter 13 plan by the BNC on February 17, 2005.  Docket #32, p. 4.  The address to which the chapter 13 plan was mailed was:  Eleanor Lindquist, 540 Fathom Dr., San Mateo, CA 94404-1005.

      Ms. Lindquist made her first appearance in the case on March 25, 2005, when she filed her "Motion to Request a Hearing to Determine Competency of Debtor Jeffery C. Lindquist Pursuant to Rule 1004.1 of the Federal Rules of Bankruptcy Procedure" ("Competency Motion").  Docket #54.  On April 20, 2005, the BNC served Ms. Lindquist with notice that a preliminary hearing on the Competency Motion would be held May 18, 2005.  Docket #70.  Also on April 20, 2005, Dr. Lindquist filed his response to the Competency Motion.  Docket #71.  On April 29, 2005, Ms. Lindquist filed her Reply to Dr. Lindquist's response to the Competency Motion.   Docket #79.

      At the initial confirmation hearing on April 21, 2005, Ms. Lindquist did not appear, and the trustee reported his objections had been resolved.  Objections filed by the Internal Revenue Service and the Oregon Department of Revenue had been withdrawn in advance of the hearing.  However, I did not confirm Dr. Lindquist's chapter 13 plan at the initial confirmation hearing, but set confirmation over to May 19, 2005, at 1:30 p.m., in light of the motions that had been filed by Ms. Lindquist.  <u>See</u> Docket #72.

      At the May 18, 2005 hearing, at which Ms. Lindquist participated, I advised Ms. Lindquist that the initial confirmation hearing had been held, and I explained in the following terms how the Chapter 13 Plan would operate:

> THE COURT:  ...This is generally how the Chapter 13 process works.  The debtor signs up, and it's the debtor's covenant under the plan that he and his counsel file with the court, after having set forth in schedules his monthly income and expenses, normal expenses, which the Chapter 13 trustee reviews.  And if there are questions about any of the expenses or income, the Chapter 13 trustee goes over that with him.
> And in fact, we had a preliminary confirmation hearing.  The trustee had some initial objections or concerns with regard to the plan, which I understood at the initial confirmation hearing had been resolved....
> ...What the plan does is, after that analysis of the income and expenses, provides that the disposable income that the debtor has left after paying his normal living

>   expenses is committed for a minimum period of three years to paying his creditor claims. Now, in addition, this is a special case in that he has agreed that as part of his payments he's going to pay your medical insurance. And you're right in your pleadings, I believe my analysis of the plan–Ms. Chapman will correct me if I'm wrong–in effect you are the largest creditor, and each month you're going to get the bulk of the money because the balance of the money under the plan as drafted would pay administrative expenses of the Chapter 13 and his priority tax debt. The only unsecured creditor who would get anything is you. So the real question is the amount. And, Ms. Chapman, am I wrong? Have I read the plan wrong?
>
>   MS. CHAPMAN: I think you have it, Your Honor....And it's unfortunate that we can't find a way to pay Ms. Lindquist any additional funds, but she is entitled to the support that we've agreed to, and I don't believe that there's any dissolution court that can find that there's any other feasible way for him to pay any more, and—
>   ....
>   MS. LINDQUIST: I'm not asking for anything more, Your Honor.

Transcript of Proceedings, May 18, 2005, pp.13-15.

   I stated that I would consider any disputes relating to confirmation in conjunction with resolution of the Competency Motion. Transcript of Proceedings, May 18, 2005, at pp. 10 and 25. At no point during the May 18, 2005 hearing did Ms. Lindquist state that she had not received a copy of Dr. Lindquist's chapter 13 plan. I then set a status/scheduling conference for July 5, 2005 to give the parties time to explore possible settlement of the issues between them before establishing the evidentiary hearing schedule .

   At the July 5, 2005 hearing I again went over the provisions of Dr. Lindquist's chapter 13 plan for Ms. Lindquist as follows:

>   THE COURT: [Dr. Lindquist] earns some money. The plan that Ms. Chapman has put together, as his counsel, proposes that he put this money primarily to use to satisfy any and all priority claims that exists [sic], the balance of any tax claims that would be out there, and the balance would go to you as support. Have I properly characterized it?
>
>   MS. CHAPMAN: Yes, Your Honor.
>
>   THE COURT: If he lives within the terms of the plan, all of his unsecured obligations at the end of the plan period would be discharged. He would keep

_____

>   making the support payments to you. He would be current with Uncle Sam and the State Revenue authorities, and he would have no more unsecured obligations.

Transcript of Proceedings, July 5, 2005, p. 9.

Again, at no point during the July 5, 2005 hearing, attended by Ms. Lindquist in person, did Ms. Lindquist state that she had not received a copy of Dr. Lindquist's chapter 13 plan.

I then entered my scheduling order (see Docket #118) which advised that a final evidentiary hearing on Chapter 13 issues was set for September 30, 2005.

Thereafter, on August 19, 2005, I held a hearing (the "August 19, 2005 Hearing"), at which Ms. Lindquist participated, to consider her motion to extend the discovery deadline and her motion for contempt with respect to doctors who had not provided documents she had requested in subpoenas to them. During the course of the August 19, 2005 Hearing, Ms. Lindquist stated the following on the record:

>   MS. LINDQUIST: I mean this adversarial proceeding mainly came about because <u>Ms. Chapman did put in her papers, bankruptcy papers, that she was going to–I can't remember the actual wording, but that she was actually going to file some kind of a case against the people who owned the storage facility.</u> [Emphasis added.]

Transcript of Proceedings, August 19, 2005, p. 15.

There are only two documents filed in the record of this case by Dr. Lindquist or his counsel prior to the August 19, 2005 Hearing that refer to any claim against a storage unit owner for failure to account for converted assets–1) Dr. Lindquist's Schedules, in particular Schedule B, that were not served on interested parties (see Docket #29, p. 4); and 2) Dr. Lindquist's initial chapter 13 plan, <u>that was served on interested parties</u> (see Docket #30, p. 1, and Docket #32).

I heard evidence regarding the Competency Motion on September 30, 2005 ("September 30, 2005 Hearing"). Following the September 30, 2005 Hearing, I took the matters tried under advisement. On October 4, 2005, and again on October 11, 2005, Ms. Lindquist filed additional argument despite the fact that I had closed the record at the conclusion of the September 30, 2005 Hearing. I issued my written findings in the form of a Letter Opinion (the "Letter Opinion"), which was sealed at my request based upon the fact that the medical history of Dr. Lindquist was the subject of the majority of the testimony. See Docket #191. The Letter Opinion concluded with the statement: "An adjourned confirmation hearing in Dr. Lindquist's chapter 13 case will be set for October 27, 2005, at 1:30 p.m., on the non-evidentiary adjourned confirmation calendar."

      Ms. Lindquist did not file any written objections to confirmation of Dr. Lindquist's chapter 13 plan in advance of the Adjourned Confirmation Hearing. However, Ms. Lindquist appeared personally at the Adjourned Confirmation Hearing to object.

      Ms. Lindquist opposed confirmation first on the basis that she had obtained from the Ninth Circuit a stay of proceedings in Dr. Lindquist's chapter 13 case. Specifically, she stated the following:

> MS. LINDQUIST: First of all, probably by the end of the day you'll have a stay that would—will come down. It will be in your office. I'm sorry I didn't get here sooner, but we did get a stay for this. That's the first thing. Second thing is–
>
> THE COURT: From whom?
>
> MS. LINDQUIST: From the Ninth Circuit. We asked them to actually–based on our letter–give you a stay because we heard from your office yesterday that nothing was stayed. So we asked them to please give us a letter of stay. So we're getting that. So you probably will get it by the end of the day.

Transcript of Proceedings, October 27, 2005, pp. 3-4.

What Ms. Lindquist flatly stated to the court was untrue. No such stay has ever been received by this court, either from the Ninth Circuit, or from any intermediate reviewing court.

      When I declined to recognize a stay in the absence of an order from the staying court, Ms. Lindquist then objected to confirmation on due process grounds, stating she had never been served with a plan "so I don't know what the plan is." Transcript of Proceedings, October 27, 2005, p. 4. However, Ms. Lindquist went on to state that at some point, she

> MS. LINDQUIST: ...actually went to the court and got all the records. I bought them because I don't have PACER. As you know I'm not an attorney. So I went to the court, and I bought all the documents that I could, up to a certain point, and then I've been buying them ever since, because I get absolutely no documents from Ms. Chapman. So I have no idea what's going on. Not ever.

Transcript of Proceedings, October 27, 2005, p. 5.

      Further, in her "Notice of Motion and Motion for Reconsideration of Proof of Claim Form and Declaration in Support Pursuant to Rule 3008" filed November 1, 2005, Ms. Lindquist states: "In fact, after telling the Court on several occasions that petitioner has never received any documents from debtors [sic] lawyer, the court or the trustee Petitioner had to purchase <u>all</u> the

_____

documents and is still doing so." See Docket #177, p. 2, lines 18-21. [Emphasis added.] "I Declare as Follows: ... 4. That Exhibits 1-4 are true and correct copies of the original documents in this case which were <u>all in the documents that I received from the Bankruptcy Court Clerk's Office when I purchased the records on July 5, 2005</u>." See Docket #177, p. 4, lines 2 and 11-13. [Emphasis added.]

During the course of the Adjourned Confirmation Hearing, I explained again to Ms. Lindquist, as I had at the hearings on May 18, 2005, and July 5, 2005, how Dr. Lindquist's chapter 13 plan worked. See Transcript of Proceedings, October 27, 2005, at pp. 2-3, 8, 9-10. Thereafter, Ms. Lindquist raised only the following as objections to confirmation of Dr. Lindquist's chapter 13 plan:

> MS. LINDQUIST: Your Honor, how–there are so many creditors that aren't listed on there, and there are assets listed there.

Transcript of Proceedings, October 27, 2005, p. 11.

I then found that it was appropriate to confirm Dr. Lindquist's chapter 13 plan. The confirmation order was entered that same day. See Docket #167.

Discussion

Based on the foregoing review of the record in this case, I find it most likely that Ms. Lindquist received a copy of Dr. Lindquist's chapter 13 plan when it was mailed to her and other interested parties by the BNC on February 17, 2005. However, if the initial mailing of the plan missed her for some reason, if she bought copies of all documents in the case no later than July 5, 2005, as she said she did at the Confirmation Hearing (Transcript of Proceedings, October 27, 2005, p. 5) and in a Declaration to the Court (Docket #177, p. 4), she would have obtained a copy of the plan through that process, since it had been docketed on or about February 15, 2005. See Docket #30.

Even though the chapter 13 plan is identified in the caption as "Chapter 13 Plan dated 2/10/05," it is possible that Ms. Lindquist, acting pro se, did not understand the significance of the plan document when she received it. However, her statements at the August 19, 2005 hearing indicate that she had read it. See Transcript of Proceedings, August 19, 2005, p. 15. Parties have the right to proceed pro se before this court, but in doing so, they bear the same responsibilities as other litigants. They bear the risk that they will not understand all implications under the law of the proceedings in which they participate. See, e.g., Dioguardi v. Durning, 139 F.2d 774, 775-76 (2d Cir. 1944):

>It is the plaintiff's privilege to decline all legal help, United States v. Mitchell, 2 Cir., 137 F.2d 1006, 1010, 1011; but we fear that he will be indeed ill advised to attempt to meet a motion for summary judgment or other similar presentation of the merits without competent advice and assistance.

In the unlikely event, in light of this record, that Ms. Lindquist did not receive or review a copy of Dr. Lindquist's chapter 13 plan prior to it being faxed to her by Ms. Chapman on October 26, 2005, Ms. Lindquist still cannot credibly claim a violation of her due process rights. I explained the workings of Dr. Lindquist's proposed chapter 13 plan to Ms. Lindquist at length at both the May 18, 2005, and July 5, 2005 hearings in which she participated. On neither occasion did Ms. Lindquist raise any issue about not having had an opportunity to review Dr. Lindquist's chapter 13 plan. I advised her at the May 18, 2005 hearing that she should discuss and negotiate chapter 13 plan issues with Dr. Lindquist and his counsel. Additionally, Ms. Lindquist received from me direct notice of adjourned confirmation proceedings at the hearings on May 18, 2005, and July 5, 2005, and in my Letter Opinion dated October 13, 2005.

Chapter 13 is designed to allow individuals with regular income to adjust their secured and unsecured debts through the use of future income, while retaining their assets under the protection of the bankruptcy court. 2 Bankruptcy Law Chapter 18, § 18.1, at p. 18-5 (Oregon CLE 1999). The chapter 13 plan is the debtor's covenant with his or her creditors as to how postpetition income will be allocated and distributed among them during the life of the plan. As I indicated at the Adjourned Confirmation Hearing, for Ms. Lindquist to argue, more than nine (9) months after Dr. Lindquist's chapter 13 case was filed, that she had not had an adequate opportunity to review and evaluate Dr. Lindquist's chapter 13 plan is astounding. Transcript of Proceedings, October 27, 2005, p. 8.

It likewise is not credible. Ms. Lindquist was told how the plan worked, whether she read it or not, as early as May 18, 2005. At least from that point in the case, she was on notice that her rights could be affected by the plan. In fact, when she heard the plan described on May 18, 2005, she stated that, "I'm not asking for anything more, Your Honor." Transcript of Proceedings, May 18, 2005, p. 15. Yet, she appeared and argued at the Confirmation Hearing that she did not know what the plan is and had "no idea what's going on." Transcript of Proceedings, October 27, 2005, pp. 4-5.

It is apparent from the record that whatever her reasons, at this point in time, Ms. Lindquist's sole purpose is to attempt to disrupt Dr. Lindquist's chapter 13 case. She was informed months before the Adjourned Confirmation Hearing what the chapter 13 process was about and how Dr. Lindquist's chapter 13 plan worked. She had adequate notice of each adjourned confirmation hearing. Indeed, despite her protestations to the contrary, Ms. Lindquist probably had a copy of Dr. Lindquist's chapter 13 plan shortly after it was filed in February, 2005. If she did not familiarize herself with the chapter 13 process in general and the workings

of Dr. Lindquist's plan in particular during all of that time so that she could present any legitimate objections, if she had any, at the Adjourned Confirmation Hearing, that is not a problem resulting from lack of due process. I find that the Objection is not well taken, and there is no reason to alter my ruling at the Adjourned Confirmation Hearing that Dr. Lindquist's chapter 13 plan should be confirmed.

      Accordingly, I will leave the confirmation order that I entered on October 27, 2005, in place, and I will enter a separate order denying the Motion.

                              Very truly yours,

                              RANDALL L. DUNN
                              Bankruptcy Judge

RLD:kc
cc: Brian D. Lynch, Trustee